United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES,<br><br>    Plaintiff,<br><br>  v.<br><br>TIM KRUSE CONSTRUCTION,<br><br>    Defendant.<br>_____ / | No. C -12-05322(EDL)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

In October 2012, Plaintiff filed a complaint under section 502 of the Employment Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. § 1132, and section 301 of the Labor Management Relations Act of 1974 ("LMRA"), 29 U.S.C. §185, alleging that Defendant violated certain collective bargaining and Trust agreements. Plaintiff seeks an order requiring, among other things, that Defendant pay unpaid and delinquent employee fringe benefit contribution amounts as well as interest, liquidated damages, reasonable attorney's fees, and costs. Plaintiff also seeks an order requiring Defendant to submit to an audit.

Defendant was served with the Summons and Complaint on November 15, 2012, and proof of service was filed with the Court on November 27, 2012. (Dkt. 4.) Defendant did not respond to the Complaint or otherwise defend the action, and the Clerk entered default against Defendant on April 9, 2013. (Dkt. 18.) By its default, Defendant is deemed to have admitted the well-pleaded averments of the Complaint except those as to the amount of damages. See Fed. R. Civ. P. 8(b)(6).

On July 5, 2013, Plaintiff filed the pending Motion for Default Judgment against Defendant. (Dkt. 24.) The District Court referred this motion to this Court for a report and recommendation. (Dkt. 30.) The Court held a hearing on Plaintiff's motion on August 13, 2013. Plaintiff appeared at the hearing through counsel Daniel Brome. Defendant did not appear at this hearing. For the

1 reasons set forth below, the Court recommends granting Plaintiff's Motion for Default Judgment, as amended by the supplemental declaration of Michelle Lauziere.

**II.     Discussion**

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1).  A considers seven factors regarding default: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Although a default judgment must not "differ in kind from, or exceed in amount, what is demanded in the pleadings," a court may conduct a hearing to determine the amount of damages. Fed. R. Civ. P. 54(c), 55(b)(2).

Here, Defendant is a business entity and therefore is not an unrepresented minor or incompetent person or a person in military service and is not otherwise exempted from default judgment.  (Compl. ¶ III, Lauziere Decl. ¶ 4.)  The Eitel factors also weigh in favor of entry of default judgment.  Plaintiff's claims seeking unpaid contributions and an audit under ERISA and the Trust Agreements appear meritorious and, as discussed in more detail below, the Complaint sufficiently states those claims.  If the motion for default judgment is denied, Plaintiff would likely be without a remedy.  See Pepsico, Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  There is nothing to suggest that there is a possibility of dispute concerning material facts because Defendant has not answered the Complaint.  Further, the sum of money at stake in this case modest in comparison to the almost $3 million at issue in Eitel.  See, e.g., Church Bros., LLC v. Garden of Eden Produce, LLC, Case No. 11-4114 EJD, 2012 U.S. Dist. LEXIS 48584, at *6  (N.D. Cal. Apr. 5, 2012).  Finally, there is no evidence that Defendant's default was due to excusable neglect.

In an action to enforce payment of delinquent contributions, "the court shall award the plan -

1  (A) the unpaid contributions, (B) interest on the unpaid contributions, (c) . . . (ii) liquidated damages
2  provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined
3  by the court under subparagraph (A), (D) reasonable attorney's fees and costs . . . ., and (E) such
4  other legal and equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

5  Plaintiff has the burden of proving its entitlement to relief through testimony or declarations.
6  To that end, Plaintiff submitted the declarations of: Michelle Lauziere, the Accounts Receivable
7  Manager for the Laborers Funds Administrative Office of Northern California, Inc.; and Daniel S.
8  Brome, Plaintiff's counsel. After the hearing, at the Court's direction, Ms. Lauziere filed a
9  supplemental declaration to correct certain calculation errors. The evidence establishes that
10 Defendant signed a Memorandum Agreement with the Northern California District Council of
11 Laborers by which it agreed to be bound by the Laborers Master Agreement, which incorporates the
12 terms of the Trust Agreements that govern each of the Trust Funds. (Lauziere Decl. ¶ 7.) Defendant
13 did not give written notice, as required under the Agreements, to terminate the collective bargaining
14 agreement so the Agreements continued between the parties, and Defendant was bound to all
15 subsequent collective bargaining agreements. (Lauziere Decl. ¶ 9.)

16 The Agreements require signatory employers to make timely contributions into the Trust
17 Funds at a specified rate for each hour worked by, or paid to, all employees performing work under
18 the Master Agreement. (Lauziere Decl. ¶ 8.) The Agreements also require employers to report the
19 number of covered hours worked by, or paid to, each of their employees performing covered work
20 by submitting Employer Reports of Contributions, along with the amounts owed pursuant to the
21 Reports, to the Trust Funds. (Lauziere Decl. ¶ 9.) The Master Agreement establishes the rate at
22 which employers are required to make contributions to the Trust Funds. (Lauziere Decl. Ex. B.)
23 When contributions are not paid, or not paid timely, liquidated damages are assessed, along with
24 interest on unpaid contributions. (Lauziere Decl. ¶ 11, Ex. A.) The Board of Trustees adopted a
25 liquidated damages flat rate of $150.00 month and an interest rate of 1.5% per month on all unpaid
26 contributions. (Lauziere Decl. ¶ 11.)

27  A.  <u>Unpaid Contributions, Interest, and Liquidated Damages</u>
28  Plaintiff's Complaint seeks unpaid fringe benefit contributions of $39,279.80 and liquidated

3

damages and interest of $11,741.63 for the period of February 2009 through June 2012. (Compl. ¶ IX.) The Complaint also seeks unpaid contributions of $38,807.72 and liquidated damages and interest of $2,063.75 for the period of January 2012 through May 2012. (Id. ¶ XIII.) The Complaint further seeks $4,342.50 in interest and liquidated damages on contributions paid late for certain months from October 2008 through December 2011. (Id.) The total amount sought in the Complaint is $96,234.77.

In Plaintiff's Motion for Default Judgment, Plaintiff seeks, as in the Complaint, unreported contributions of $39,279.80 for the period of February 2009 through June 2012. (Lauziere Decl. ¶ 16, Ex. F.) Plaintiff also seeks interest of $57,502.60 on this amount. In Ms. Lauziere's supplemental declaration, she clarifies that the correct amount of interest sought is &18,222.80. In addition, Plaintiff seeks unpaid contributions of $126,547.76 and liquidated damages and interest of $14,000.55 for the period of January 2012 through April 2013. (Lauziere Decl. ¶ 14, Ex. D.) Plaintiff further seeks $4,132.61 in liquidated damages and interest for several months of untimely contributions. (Lauziere Decl. ¶ 15, Ex. E.) The total amount sought in Plaintiff's Motion for Default Judgment, excluding costs and attorney's fees, is $241,463.32.

Plaintiff is entitled to $39,279.80 in unpaid contributions for the period of February 2009 through June 2012. Plaintiff is also entitled to $18,222.80 in interest on this amount. (Supp. Lauziere Decl. ¶ 2.) Further, Plaintiff is entitled to $4,132.61 in liquidated damages and interest for the several months of untimely contributions between August 2010 and December 2011. (Lauziere Decl. ¶ 15, Ex. E.)

Plaintiff is also entitled to the unpaid contributions of $126,547.76 and interest and liquidated damages of $14,000.55 for the period of January 2012 through April 2013. The Complaint sought amounts for a five month period from January 2012 through May 2012. The Complaint also sought "actual damages," and an order requiring Defendant to pay additional liquidated damages and interest on outstanding amounts through trial. Further, the Complaint requested that the Court retain jurisdiction over the matter so it can enforce an order compelling an audit and "payment of all amounts found due and owing." Accordingly, the Complaint gave Defendant notice that Plaintiff was seeking not just the damages listed specifically in the complaint

4

but also other amounts found to be due during the litigation. Moreover, Plaintiff has served Defendant by mail with all the filings in this case, including Court orders and Plaintiff's Motion for Default Judgment and supporting documents.

Under Federal Rule of Civil Procedure Rule 54(c), a default judgment must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Courts have awarded damages not specifically mentioned in complaints in ERISA cases where the defaulting defendants were on notice of the post-complaint amounts sought. Bd. of Tr. of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co., Case No. 08-2038 SC, 2009 U.S. Dist. LEXIS 89373, at *10-*15 (N.D. Cal. June 17, 2009); Tr. of the Ironworkers Local Union No. 16 Pension Fund v. AS&L Indus. Servs., Case No. 12-2084, 2013 U.S. Dist. LEXIS 77721, at *3 (D. Md. May 31, 2013); Tr. of the St. Paul Elec. Constr. Indus. Fringe Ben. Funds v. Martens Elec. Co., 485 F. Supp. 2d 1063, 1064-69 (D. Minn. 2007); Ames v. Stat Fire Suppression, Inc., 227 F.R.D. 361, 361 (E.D.N.Y. 2005). But see Tragni v. Souther Elec. Inc., Case No. 09-32 RS, 2009 U.S. Dist. LEXIS 86818, at *5-*7 (N.D. Cal. Sept. 2, 2009) (recommending that default judgment be denied because complaint was vague as to additional sums owed and Defendant lacked sufficient notice of additional amounts sought).

Because Defendant has been fully apprised of the relief Plaintiff seeks, and has chosen not to contest it, Plaintiff should be awarded the amounts sought in the motion for default judgment for the period of January 2012 through April 2013: unpaid contributions of $126,547.76 and liquidated damages and interest of $14,000.55.

B.  Attorney's Fees and Costs

Attorney's fees and costs of action shall be awarded to a Trust Fund or Employee Benefit Plan that receives a judgment in its favor. See 29 U.S.C. § 1132(g)(2)(D). Further, the Trust Agreements in this case provide for the recovery of attorney's fees and costs in an action to enforce the Agreements and recover delinquent amounts due. (Lauziere Decl. ¶ 12, Ex. A.) Plaintiff has submitted the declaration of attorney Daniel S. Brome to prove attorney's fees and costs. (Brome Decl., Dkt. 26.) Mr. Brome states that Plaintiff's counsel have spent a total of 35.5 hours working on this case, comprised of 10.5 hours of work performed by paralegals, 7.75 hours of work performed

5

by firm shareholders, and 17.25 hours of work performed by associates. (Brome Decl. ¶ 5.) He calculates that in prosecuting this action, Plaintiff's attorneys incurred a total of $9,198.75 in fees and $905.24 in costs. (Brome Decl. ¶ 13, 14, Ex. A, Ex. B.) Mr. Brome states that Mr. Hinkle, Ms. Lozano-Batista, and Mr. Carder, shareholders in the firm, billed at the Shareholder hourly rate of $345.00. (Brome Decl. ¶¶ 6-8). Mr. Brome billed at the Associate hourly rate of $290.00. (Brome Decl. ¶ 9.) Three paralegals billed at an hourly rate of $145.00. (Brome Decl. ¶¶ 10-12.) Plaintiff also estimates it will incur an additional $1,160.00 in fees through the hearing on default judgment and follow up work. Costs in this matter consist of, among other things, a filing fee of $350.00 and service fees of over $200.00. (Brome Decl. Ex. B.)

The amount of time actually expended and the billing rates are reasonable given the work performed. In addition, the costs are reasonable. The Court does not, however, recommend an award of attorney's fees for work not yet performed. The Court gave Plaintiff an opportunity to file a supplemental fee declaration after the hearing, but Plaintiff did not submit one. Thus, the Court recommends awarding attorney's fees of $9,198.75 and costs of $905.24.

C.   Audit and Other Relief

Plaintiff also seeks an order requiring Defendant to submit to an audit and other equitable relief. Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2)(E). Here, the Agreements provide for an audit of the books and records of signatory employers. Section 7 of the Master Agreement states: "Each Individual Employer, upon request of any Trust fund specified in this Agreement, shall permit a Trust Fund Auditor to review any and all records relevant to the enforcement of the provisions of this Agreement pertaining to the Trust Funds. (Lauziere Decl. Ex. B.) As Defendant is contractually obligated to submit to an audit, Plaintiff has demonstrated that injunctive relief is appropriate. In order to conduct the audit, Plaintiff seeks auditor access to the following documents:

> Individual earning records (compensation); W-2 forms; 1096 and 1099 forms; reporting forms for all Trust Funds; State DE-3 tax reports; workers compensation insurance report; employee time cards; payroll journal; quarterly payroll tax returns (form 941); check register and supporting cash voucher; Form 1120- 1040 or partnership tax returns; general ledger - (portion relating to payroll audit).

(Proposed Order, Dkt. 28.) Plaintiff is entitled to such an audit and the other equitable relief sought,

6

which comprises orders compelling Defendant to pay unpaid contributions identified by the audit, among other things.

### III.     Conclusion

For the reasons set forth above and for good cause shown, the Court recommends that default judgment be entered in the amount of $212,287.46, which is comprised of: 165,827.56 in unpaid and delinquent contributions; 36,355.91 in interest and liquidated damages; $9,198.75 in attorney's fees, and 905.24 in costs.  The Court also recommend that judgment be entered compelling Defendant to submit to an audit by auditors selected by Plaintiff at Defendant's premises during business hours, or where the records are kept, at a reasonable time or times, and to allow the auditors to examine and copy Defendant's books, records, papers, reports, including those described above.  Additionally, the Court recommends that judgment be entered compelling Defendant: (1) to pay all amounts found due and owing as a result of the audit; (2) to submit to the Trust funds all reports and contributions due and owing; (3) to refrain from failing, neglecting, or refusing to timely submit required monthly contributions reports and payments as required by the terms of the collective bargaining agreements, so long as Defendant is obligated to contribute to the Trust Funds; and (4) to pay interest on any amounts found due in an amount to be determined consistent with 26 U.S.C. § 6621.  Finally, the Court recommends that the District Court retain jurisdiction of this matter.

Any party may serve and file specific written objections to this recommendation within fourteen (14) working days after being served with a copy.  See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: August 22, 2013

*Elizabeth D. Laporte*

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge